IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**TERESA L. BROWN,**                              06-CV-6177-BR

       **Plaintiff,**                         OPINION AND ORDER

v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security,**

       **Defendant.**


**KATHRYN TASSINARI**
**MARK A. MANNING**
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401
(541) 434-6466

       Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**JEFFREY BAIRD**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2205

    Attorneys for Defendant

**BROWN, Judge.**

  Plaintiff Teresa L. Brown seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

  This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383.  Following a review of the record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

  Brown applied for DIB on March 10, 2003, alleging a disability onset date of November 20, 2002.  Tr. 76-78.  Her application was denied initially and on reconsideration.  Tr. 19, 46.  An Administrative Law Judge (ALJ) held hearings on May 11, 2005, and December 6, 2005.  Tr. 473, 481.  Brown; her husband, Reid Brown; and Vocational Expert (VE) Patricia Lesh testified at the hearing.  Tr. 482.  Brown was represented by an attorney. Tr. 475, 483.

On March 22, 2006, the ALJ issued a decision in which he found Brown was not disabled and, therefore, not entitled to DIB. Tr. 19-25. The Appeals Council denied Brown's request for review on May 19, 2006. Tr. 12-15. On June 5, 2006, the Appeals Council set aside its denial, considered additional information provided by Brown, and again denied her request for review. Tr. 7-10. Thus, the ALJ's decision became the final decision of the Commissioner on June 5, 2006.

## BACKGROUND

Brown was 44 years old at the time of the hearing and had completed her GED. Tr. 485. Brown reports suffering migraine headaches at least since the age of 20. Tr. 166, 505. Her headaches are reportedly accompanied by photophobia, phonophobia, vomiting, and neurologic symptoms. Tr. 166, 197. Brown also has been diagnosed with a pain disorder associated with psychological factors and borderline intellectual functioning. Tr. 365.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically

3 - OPINION AND ORDER

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40. The court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193.

4 - OPINION AND ORDER

**DISABILITY ANALYSIS**

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. §§ 404.1520(a).  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Yuckert*, 482 U.S. at 140.  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknow-ledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

5 - OPINION AND ORDER

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that she has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Brown had not engaged in substantial gainful activity since the onset of her alleged disability.  Tr. 21.

At Step Two, the ALJ found Brown's impairments, which include migraine headaches, pain disorder, and borderline intellectual functioning, are severe.  Tr. 22.

At Step Three, the ALJ found Brown's impairments do not meet or equal a listing.  Tr. 22.

At Step Four, the ALJ found Brown has no exertional limits and retains the RFC to perform heavy work.

At Step Five, the ALJ found Brown is capable of performing all of her past relevant work, including work as a parking-lot attendant and manager, bartender, cook, cashier, and electronics assembler.  Tr. 25.  Accordingly, the ALJ found Brown is not disabled.  Tr. 25.

## DISCUSSION

Brown contends the ALJ erred by improperly discrediting her testimony and failing to evaluate testimony provided by her husband, Reid Brown.

**I.   Brown's Testimony.**

Brown contends the ALJ erred when he found her statements concerning the intensity, duration, and limiting effects of her

7 - OPINION AND ORDER

impairments "not entirely credible."  Tr. 23.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  When construing credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

When assessing a claimant's credibility, the ALJ must apply the threshold test articulated in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).  The ALJ first must determine whether there is objective medical evidence of an impairment and whether the impairment could reasonably cause some degree of the claimant's symptom(s).  *Id*. at 1407.  "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281 (citations omitted).

Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of

medication, failure to seek treatment or to follow prescribed treatment, and reports from physicians. 20 C.F.R. § 404.1529. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). When evaluating a claimant's credibility, an ALJ may rely on the inadequately explained failure of the claimant to follow a prescribed course of treatment. *See, e.g., Smolen*, 80 F.3d at 1284.

### A. Brown's Testimony.

Brown testified she suffered migraines about twice a week even though recent treatments helped her. Tr. 498, 500. She further testified she had experienced headaches since she was at least 20 years old, which was 24 years before the date of her first hearing before the ALJ. Tr. 505. The ALJ noted, however, Brown had worked off and on during those years and asked why she could not work now. Tr. 505. Brown stated her headaches occurred much more frequently now. For example, she would get one every six months in the past, but she got one approximately twice a week at the time of the hearing. Tr. 505. Occasionally her headaches lasted up to 48 hours. Tr. 506.

Brown's symptoms include nausea and sensitivity to light and sound. Tr. 503. Brown treats her migraines primarily by going to her bedroom, putting in earplugs, and playing a relaxation tape made by one of her doctors. Tr. 500. This procedure fails to relieve her pain from the migraines about once a month, and

9 - OPINION AND ORDER

she then takes a pain pill (Vicodin). Tr. 500, 503. The relaxation tape can take between four and six hours to work, but a pain pill takes only around 20 minutes. Tr. 500-01. Brown does not like to take pain pills, however, because they can cause "rebound headaches" that her doctors attribute to analgesic rebound. Tr. 501. Brown testified her recent migraines were usually strong, but she tried to use the relaxation tape as a primary treatment. Tr. 502.

Brown was aware Alexandre Lockfeld, M.D., who was Brown's treating physician for a time, was concerned that smoking might affect her migraines. Tr. 504. Brown was trying to quit, but she was still smoking around ten cigarettes per day at the time of her second hearing. Tr. 504. Brown further testified other doctors told her not to worry about her smoking and to focus instead on reducing stress in her life. Tr. 505.

**B.  ALJ's Decision.**

Factors relevant to the ALJ's credibility determination include: medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284. *See also* 20 C.F.R. § 404.1529(c)(3). "The ALJ must

state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Thus, because the ALJ did not find Brown was malingering, he was required to provide clear and convincing reasons supported by substantial evidence in the record for rejecting Brown's testimony. *Id.* at 1281.

The ALJ concluded Brown's statements concerning the intensity, duration, and limiting effects of her symptoms were "not entirely credible" even though he found Brown's impairments could be expected to produce her alleged symptoms. Tr. 23. A significant amount of medical evidence in the record supports the ALJ's conclusion. For example, emergency-room physician Michael Barkman, M.D., opined "there is at least a partial hysterical component" to one of Brown's headaches. Tr. 23, 190. Kenneth G. Starr, M.D., opined Brown might have a "psychosomatic or somatoform type of headache." Tr. 23, 276. Both statements reflect the possibility that Brown's pain testimony might not be credible.

In addition, a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a legitimate reason for finding the claimant's testimony not fully credible. *Id.* at 1284. Here the ALJ concluded "an individual with intractable migraines would do everything her medical doctor suggested," which Brown did not do.

11 - OPINION AND ORDER

Tr. 23. In particular, the ALJ found Brown did not entirely comply with the treatment recommendations of Alexandre Lockfeld, M.D. Tr. 23. Dr. Lockfeld, one of Brown's treating physicians, noted an incident with Brown shortly before he dismissed her from his care:

> [Brown] began by telling me very forcefully that she would refuse to take blood thinner and did not want to discuss her cigarette smoking, as she saw no relationship between this and her headaches . . . . Although I had instructed her not to take Midrin at the last visit last month, she has been taking her generic equivalent, Migrazone. She apparently continues to smoke, and has a strong odor of tobacco on her person.
>
> Apparently after the MRI scan was performed, Dr. Mundall, who was on call, contacted her and recommended initiating antiplatelet therapy with Plavix, which she refused.
>
> I attempted to have a discussion with her regarding the concern on the part of her physicians about the possibility of migrainous stroke, and the reasons for recommending antiplatelet therapy and smoking cessation. She continued an extremely adversarial tone, and does not appear receptive to any recommendations made by myself or my coverage.

Tr. 23, 162. Dr. Lockfeld dismissed Brown from his care because he "did not feel [he] could continue to work with her" after this session. Tr. 23, 162. Thus, Dr. Lockfeld's records indicate Brown was not fully compliant with his treatment recommendations, which bears on Brown's credibility concerning her pain symptoms.

Robert Tearse, M.D., also one of Brown's treating

12 - OPINION AND ORDER

physicians, treated Brown during 2002 and 2003. Tr. 219-22. Dr. Tearse noted Brown was "quite defensive" about her cigarette use and her alcohol consumption and refused to discuss or to change either habit. Tr. 23, 222. Dr. Tearse also was "not impressed" with Brown's need for injections of Toradol or Percocet and encouraged her to stop. Tr. 24, 222. Moreover, Dr. Tearse noted Brown "blames headaches for irritability and failure to be re-hired as a cook" and reported Brown stated she planned to seek disability benefits "because the headaches allegedly prevent her from working." Tr. 24, 221. The ALJ concluded "Dr. Tearse was clearly unconvinced that [Brown's] headaches were disabling." Tr. 24.

Joan Jensen, M.D., was an examining physician who saw Brown on November 5, 2004. Tr. 240-45. Dr. Jensen discussed with Brown the possibility of "rebound headaches" after taking medication such as Tylenol #3, which apparently contains codeine. Tr. 241. Brown, however, "was extremely resistant to making a change (coming off daily intake of narcotic analgesic medication)." Tr. 23, 241. The ALJ again concluded Brown's noncompliance with recommended treatments is inconsistent with her assertions of disability due to migraines. Tr. 23.

The ALJ also noted Stephan Ames, M.D., a treating physician, was skeptical of Brown's complaints when he treated her. Tr. 251-62. Dr. Ames reported, "I have some concerns about her

intentions and that she is seeking disability." Tr. 24, 253. Dr. Ames also noted, "I am unable to get her old records as I think she may not want me to find them." Tr. 24, 253. In summary, the opinions of Drs. Barkman, Starr, Lockfeld, Tearse, Jensen, and Ames, in addition to the fact that Brown apparently failed to comply with several of their primary treatment recommendations, support the ALJ's conclusion that Brown's testimony about her disability due to her symptoms is not entirely credible.

The ALJ also pointed out that Brown's medical record did not include any objective medical findings to support her testimony. Tr. 23. The ALJ noted the record, in fact, contains objective findings that might indirectly indicate inconsistency with Brown's subjective symptoms such as normal narrowing in Brown's cervical spine and normal blood pressure. Tr. 23. The Ninth Circuit, however, has cautioned against placing too much weight on the absence of objective medical evidence when evaluating certain limitations. For example, in *Benecke v. Barnhart*, the plaintiff claimed she suffered disability from fibromyalgia, but the ALJ did not believe her complaints and determined the plaintiff was not disabled. 379 F.3d 587, 594 (9th Cir. 2004). The court concluded the "ALJ erred by effectively 'requiring' objective evidence for a disease that eludes such measurement." *Id. See also Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989)(an

"ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings.").

Here Brown's primary symptoms associated with migraines appear to be subjective pain, Tr. 204, 237, and, therefore, the absence of objective medical evidence is not dispositive to the ALJ's inquiry.  The ALJ, however, did not discredit Brown's testimony "merely" because Brown's testimony was "unsupported by objective medical evidence."  Although that was a factor, the ALJ also heavily weighted the fact that Brown failed to comply with the treatment recommendations of several treating and examining physicians.  Tr. 23-24.

In addition, the ALJ also based his conclusion as to the credibility of Brown's testimony on the fact that the record reflects Brown's migraines began some time between her fourteenth and twentieth birthdays, which "long predate[s] her alleged onset of disability," and yet Brown still was able to work until 2004.  Tr. 24.

The ALJ also found Brown's testimony was not fully credible because the evidence did not indicate her headaches, which, as noted, predated her alleged disability, worsened or changed in any significant respect around the time of her onset date.  Tr. 24.  As support for his finding, the ALJ cites the report of Robert Daugherty, M.D., in which Dr. Daugherty stated Brown

15 - OPINION AND ORDER

advised him that her "headaches have really not changed much in character over the years."  Tr. 166.  Brown contends this statement applied only to the severity of her headaches rather than to their frequency and pointed to her testimony that the frequency of her headaches increased significantly over 20 years.  Tr. 505.  The ALJ, however, relied on Dr. Daugherty's report.  Because the ALJ's conclusion as to the meaning of this portion of Dr. Daugherty's report is a reasonable one, it must be upheld even if the "evidence is susceptible to more than one rational interpretation."  *Andrews,* 53 F.3d at 1039-40.  As the court stated in *Fair*:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact.  Credibility determinations are the province of the ALJ.  *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

885 F.2d at 604.

Accordingly, the Court concludes on this record that the ALJ did not err when he found Brown's testimony not fully credible because the ALJ provided legally sufficient reasons supported by

16 - OPINION AND ORDER

the record for doing so.

**II.  Reid Brown's Testimony.**

Brown also contends the ALJ erred by failing to consider the testimony of her husband, Reid Brown.

The ALJ must provide reasons germane to each lay witness before rejecting the testimony of the witness, but the ALJ is not required to consider or to address nonprobative information. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ may discount lay testimony that conflicts with medical evidence. *Lewis*, 236 F.3d at 511.

    **A.**    **Reid Brown's Testimony.**

Reid Brown testified at the administrative hearing that he has been married to Brown for six years and has been present numerous times when she has had a migraine.  Tr. 513.  Reid Brown testified when Brown has migraines, exposure to light is "too much for her."  Tr. 514.  For treatment, she sits in her bedroom and has the windows covered in tin foil to prevent light intrusion.  Tr. 514.  While she is experiencing a migraine, Brown does not leave the bedroom and sometimes needs help to go to the bathroom.  Tr. 514.  Brown's mood is usually poor when she has a migraine and she becomes more confrontational.  Tr. 516. According to Reid Brown, after Brown began a new treatment in Portland, her migraines occurred only two or three times per week and generally lasted about half of a day.  Tr. 515.

17 - OPINION AND ORDER

**B.    ALJ's Decision.**

The ALJ noted Reid Brown testified that Brown had fewer headaches since beginning a new treatment. Tr. 24. With the exception of this reference, the ALJ did not discuss or evaluate Reid Brown's testimony. The Ninth Circuit has held an ALJ's disregard of lay testimony is error and not mere harmless error in most cases. *See Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006)(a reviewing court cannot find harmless the ALJ's failure to consider lay evidence unless "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

Reid Brown's testimony, although probative, generally reiterated Brown's testimony. The Court already has concluded the ALJ did not err when he found Brown's testimony not fully credible. On this record, therefore, even if Reid Brown's testimony were fully credited, it would not alter the disability determination reached by the ALJ.

Accordingly, the Court concludes the ALJ's slight consideration of Reid Brown's testimony was not error under these circumstances.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's

final decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 25th day of June, 2007.

/s/ Anna J. Brown

_____
ANNA BROWN
United States District Judge

19 - OPINION AND ORDER